IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


STEVEN D. CODY                                                                          PLAINTIFF

         v.                                    Civil No. 6:09-cv-06026

JAQUEINE NEWBORN,
Jail Administrator, Clark County
Detention Center; TIM PATTERSON,
Chief Deputy, Clark County
Detention Center; RICK LOY,
Jail Administrator, Clark County
Detention Center; DAVID
TURNER, Sheriff, Clark County;
and OFFICER MOORE                                                                      DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff filed this civil rights action pursuant to the provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  Defendants filed a motion for summary judgment (ECF Nos. 56, 57 & 58).  Plaintiff filed a response to the motion (ECF No. 59).

Plaintiff is currently incarcerated in the Maximum Security Unit of the Arkansas Department of Correction located in Tucker, Arkansas.  The events at issue in this case occurred while he was incarcerated in the Clark County Detention Center (CCDC).  Specifically, Plaintiff maintains that: (1) Defendants failed to protect him from attack by fellow inmates; and (2) he was subjected to unconstitutional conditions of confinement at the CCDC.

-1-

**1. Background**

Plaintiff filed this action on April 9, 2009 (ECF No. 1).  When the complaint was filed, Plaintiff was incarcerated in the CCDC.  Plaintiff alleges failure to protect claims involving two separate incidents.  He also alleges he was being "housed" in inhumane conditions.  Specifically, he alleges he was subjected to the following unconstitutional conditions of confinement:  bad heating, cooling, and plumbing; food with hair and other foreign objects in it; easy smuggling of contraband including weapons into the jail; physical and sexual assaults against inmates; under staffing with only one jailer for forty-seven to fifty-four inmates; inadequate opportunities to maintain hygiene; lack of opportunities to exercise and falsification of documents regarding recreational opportunities; hanging wires; a leaking roof; being forced to eat on tables with lead based paint; exposure to black mold and asbestos; failure to follow medical orders; dangerous conditions leading to a fire in the pod; general uncleanliness; and being locked down without due process.

.        In response to the summary judgment motion, Plaintiff indicates he was incarcerated at the CCDC from March 20, 2008, until July 27, 2009.  (ECF No. 59 at ¶ 1(A)).   He indicates he was a pretrial detainee until he was convicted on July 13, 2009.  (ECF No. 59 at ¶ 1(B)).  He states he was transferred to the Arkansas Department of Correction on July 27, 2009.  *Id.*

With respect to the conditions at the CCDC, Plaintiff agrees that the claims he asserts in this case dealing with inadequate staffing, a lack of safety, only being allowed to shower twice a week, having foreign particles in his food, holes in the windows allowing inmates to smuggle in prohibited items, no jailer supervising the inmates when someone is being booked in, problems with the heating and plumbing, and there being a fire in the pod are all identical to the claims asserted in Cody v. Newburn, et al., Civil No. 6:09-cv-06016.

-2-

According to Plaintiff, Defendants Rick Loy and Jaqueine Newburn falsified records to make it appear as if the inmates were given opportunities to exercise. (ECF No. 59 at ¶ 3). Approximately once a month, Plaintiff indicates he went outside to the recreation area. *Id*. He suffered no physical problems due to the lack of exercise. *Id*.

Plaintiff indicates there were exposed and hanging wires in front of the mirror. (ECF No. 59 at ¶ 4). To shave, you had to move the wires. *Id*. Sometimes Plaintiff states you got shocked by the wires. *Id*. In fact, on one occasion Plaintiff states he received an electrical shock strong enough to knock him across the room. *Id*.

The roof leaked in various places including in the day room. (ECF No. 59 at ¶ 5). According to Plaintiff, no efforts were made to repair the roof and the inmates had to put blankets on the floor in an effort to absorb the water. *Id*.

With respect to the lead based tables, Plaintiff states the paint was chipping off the tables. (ECF No. 59 at ¶ 6). When you lifted your cup to drink, pain chips or particles would fall into your food. *Id*. Plaintiff indicates he felt nauseated whenever he ate at the tables. *Id*.

According to Plaintiff, there was a tremendous amount of black mold on the shower ceiling. (ECF No. 59 at ¶ 7). He asserts there was also green mold in the cracks and crevices of the shower and on the day room ceiling. *Id*. Plaintiff indicates he did attempt to clean the shower but was only given Windex. *Id*. He maintains the cleaner was insufficient to remove the build up of mold. Plaintiff also states he was told by the exterminator that the ceiling vents contained asbestos. *Id*.

On two different occasions, dates not specified, Plaintiff states he was placed on lock-down because he was assaulted. (ECF No. 59 at ¶ 8). He states he was not given an opportunity to tell his side of the story. *Id*.

On April 9, 2009, Plaintiff states he was assaulted by Chauncey Charles, a fellow inmate. (ECF No. 59 at ¶ 9).  He indicates he was assaulted after he told jail personnel about contraband being smuggled into the jail.  *Id.*  Again on July 19, 2010, Plaintiff states he was assaulted by inmates Chance Rutherford, Michael Arnette, and David Alcala for having advised jail personnel about contraband.  *Id.*

On August 4, 2008, Plaintiff states he "got into" it with Lester Livingston because he tried to intimidate everyone over the television channel.  (ECF No. 59 at ¶ 13).  Plaintiff indicates he stood up and told Livingston not to get too close because he was bumping the Plaintiff.  *Id.*  According to Plaintiff, Livingston then rushed him.  *Id.*

Plaintiff believes the policies of Clark County with respect to the care, treatment, and housing of detainees resulted in the unconstitutional conditions of confinement and caused him to suffer physical injuries.  (ECF No. 59 at ¶ 14).  Plaintiff indicates he was injured during both altercations and suffered a variety of ailments including shortness of breath, lightheadedness, chest pains, and an increased heart rate due to the conditions of confinement.  *Id.* at ¶ 15.

## 2.  Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling on a summary judgment motion, the Court cannot weigh the evidence or resolve disputed  issues of fact in favor of the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"[A] disputed fact alone will not defeat summary judgment, rather there must be a genuine issue of material fact.  To be material, a fact must affect the outcome of the suit under the governing law."  *Torgerson v. City of Rochester*, 2011 WL 2135636, *16 (8th Cir. June 1, 2011)(internal

quotation marks and citations omitted).

### 3. Arguments of the Parties

Defendants have moved for summary judgment on all official capacity claims on the grounds Plaintiff has not demonstrated that any policy of Clark County is responsible for the allegedly inadequate conditions or the failure to protect him from assault. Next, Defendants move for summary judgment on all conditions of confinement claims because they were not deliberately indifferent to the conditions in the jail and Plaintiff was not injured by the conditions. In this regard, they maintain Plaintiff's claims amount to nothing more than complaints about the timing of repairs done at the facility and their efforts to remedy problems. Finally, Defendants contend they are entitled to summary judgment on the failure to protect claims because they were not deliberately indifferent to the need to protect Plaintiff from a substantial risk of serious harm.

Plaintiff maintains he was subjected to unhealthy and dangerous conditions of confinement and suffered various health problems as a result of the conditions. He maintains there are issues of fact that preclude summary judgment.

### 4. Discussion

As noted above, Plaintiff asserts both a failure to protect claim and unconstitutional conditions of confinement claims. The claims will be addressed in turn.

### A. Failure to Protect

Plaintiff's claims based on attacks by fellow detainees are considered to be failure to protect claims. In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

> An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that

risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595.  *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002).

In this case, Plaintiff makes no allegation that Defendants' were aware that there was a risk that Charles, Rutherford, Arnette, Alcala or Livingston would attack him or any other inmate. Plaintiff has not indicated that these inmates were involved in other attacks or were prone to violence. He has not identified other attacks by these inmates.  This falls far short of showing Plaintiff was incarcerated under conditions posing a substantial risk of serious harm or that a pervasive risk of harm existed.  *See e.g., Norman v. Schuetzle*, 585 F.3d 1097, 1104 (8th Cir. 2009)(The facts as presented did not put the warden on notice that Meyers "presented a substantial risk of harm to inmates in the general population"); *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985)("[a] pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror.").  On the record before me, no claim of constitutional dimension is stated.

### B.  Unconstitutional Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the

Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). In this Circuit, the Eighth Amendment's deliberate indifference standard of culpability applies to all claims that detention officials have failed to provide adequate food, clothing, shelter, medical care, and reasonable safety. *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006); *see also Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007). This is true whether the Plaintiff is a pretrial detainee or a convicted prisoner. *Id.*

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or that are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004)(*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id.* The standards against which a court measures prison conditions are "the evolving standards of decency

-7-

that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

Here, Defendants, placing heavy reliance on the fact that Plaintiff has admitted, in responses to discovery requests, that efforts have been made to remedy a number of the problems, maintain there is no genuine issue of material fact as to whether they exhibited deliberate indifference to Plaintiff's conditions of confinement. I disagree. While Plaintiff indicates measures were undertaken to remedy the conditions he identifies, such as the heating and air conditioning, he asserts the problems were not resolved.  (ECF No. 35-1, Defendants' Exhibit A).  Plaintiff similarly indicates it sometimes took weeks for repair or maintenance people to be called out to remedy problems.  *Id.* Other problems he states were only remedied after he filed this lawsuit.  *Id.*

Defendants have provided no other information about the conditions at the jail or of efforts made to remedy problems.  In his summary judgment response, Plaintiff has asserted, under penalty of perjury, that each Defendants knew about the inhumane conditions of confinement and failed to take steps to improve the conditions. *See Farmer v. Brennan*, 511 U.S. 825, 827 (994)(prison official can be found liable for denying inmate humane conditions of confinement if official knows of and disregards excessive risk to inmate safety).  Based on the summary judgment record, I cannot say there are no genuine issues of material fact as to whether the Defendants knew of and disregarded a substantial risk of serious harm to the Plaintiff.

With respect to the official capacity claims, I also believe there are genuine issues of fact as to whether the Clark County had a policy of subjecting detainees to harsh or inhumane conditions of confinement.  *See e.g., Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997)("[B]y the municipality's promulgation and maintenance of the complained of condition, [the court assumes the

-8-

municipality] intended to cause the alleged constitutional deprivation."); *Johnson v. Lockhart*, 941 F.2d 705, 707 (8th Cir. 1991)("Abdication of policy-making and oversight responsibilities can reach the level of deliberate indifference and result in the unnecessary and wanton infliction of pain to prisoners when tacit authorization of subordinates' misconduct causes constitutional injury.").

### 5. Conclusion

I therefore recommend that the Defendants' summary judgment motion (ECF No. 56) be granted in part and denied in part. Specifically, I recommend the motion be granted with respect to Plaintiff's failure to protect claims and denied with respect to Plaintiff's unconstitutional conditions of confinement claims. The issue of whether this case should be consolidated with Plaintiff's two other pending cases will be addressed in a separate order.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 25th day of August 2011.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE